**WOOSTER FARM DAIRIES CO v KEISTER**
**WOOSTER FARM DAIRIES CO v NOMMAY**
**WOOSTER FARM DAIRIES CO v MARKO**

Ohio Appeals, 9th Dist, Summit Co

Nos 2770, 2771 & 2772. Decided Feb 19, 1937

Slabaugh, Seiberling, Huber & Guinther, Akron, and Weiser & Weimer, Wooster, for appellant.

Otto C. Moyer, Barberton, for appellees.

## OPINION

By WASHBURN, J.

These cases are before this court on appeals on questions of law, having been tried in the Municipal Court of Barberton, and the three cases being very similar as to facts and questions of law involved.

They were actions brought on behalf of the appellant to recover claimed, ascertained and liquidated damages under separate contracts with the respective appellees, the first of which contracts reads as follows:

"For and in consideration of the Wooster Farm Dairies Company, of Wooster, Ohio, buying all the milk and cream produced for sale by me, at a price to be established by it and based on the Cleveland market, and produced by me in accordance with the Sanitary Code of the City of Cleveland, under ordinance No. 84460, being regulations governing Class 1 milk, and any amendments subsequently made thereto and all rules and regulations made pursuant to the ordinance or any amendments thereto by the city of Cleveland, these products to arrive at the plant of the Wooster Farm Dairies Company in fresh and sanitary condition, I hereby agree to consign and ship on and after October 30, 1931, f.o.b. the Wooster Farm Dairies Company, Wooster, Ohio, to the Wooster Farm Dairies Company, at all times until this contract is terminated as hereinafter provided for, conditions and method of delivery to the Wooster Farm Dairies Company to be subject to its approval at all times, my entire output of milk and cream. Both parties hereto mutually agree that this contract can only be cancelled or terminated on March 1st, 1932, or on the 1st day of March in any year thereafter, by the party desiring to cancel or terminate said contract giving notice in writing to the other party 30 days prior to the date of cancellation or termination, the written notice to be delivered in person to the party to receive it, or mailed by registered mail addressed to him. BOTH PARTIES HERETO MUTUALLY AGREE THAT IF EITHER PARTY TERMINATES THE CONTRACT **EXCEPT FOR GOOD CAUSE** AT ANY OTHER TIME THAN THAT FIXED HEREIN FOR THE TERMINATION OR CANCELLATION, AND WITHOUT GIVING THE 30 DAYS NOTICE REQUIRED BY THE TERMS HEREOF, THAT THE PARTY SO CAUSING THE BREACH OF CONTRACT SHALL PAY TO THE OTHER PARTY AS FIXED, ASCERTAINED AND LIQUIDATED DAMAGES WITHOUT PROOF OF LOSS OR DAMAGE FOR SUCH BREACH OF CONTRACT THE SUM OF $100 NOT LATER THAN TEN DAYS AFTER SUCH BREACH. If notice be given by either party of the intention to terminate or cancel the contract, and after the day herein fixed for the termination or cancellation, shipment is continued by the producer and the products are received by the Wooster Farm Dairies Company, the parties hereby agree that this contract shall be in force and effect between them the same as if no notice had been given.

"In Witness Whereof, the parties of those present have hereunto set their hands and seal this 30th day of October, 1931." (Emphasis ours).

When this particular contract was entered into, and for some time theretofore and thereafter, the established price for milk "based on the Cleveland market" was an amount per pound, for milk of a certain test, and was what is known as a "flat rate."

In June, 1933, the legislature of Ohio passed what is known as the "Burke Law," by which a milk marketing commission was created; and in said act the commission was given the power of determining what contracts should be entered into between distributor purchasers of milk and producers of milk. That commission determined that in the Cleveland market distributing purchasers should pay producers not on the flat price plan, but upon a base surplus rate, by which the producers should

be paid a certain price for a base quantity, and a different and lower price for milk delivered exceeding the base so established.

After said law went into effect, the producer who signed the contract hereinbefore quoted sold milk to appellant upon such base rate instead of said flat rate. The other two contracts, which are identical with the first except as to dates, were signed after said law went into effect, and the producers signing said contracts sold milk to the appellant upon said base rate.

The parties to said contracts continued to operate under said law until, by the terms of said act, said law expired, which was on July 1, 1935.

But before said law, which destroyed the right of producers to freely bargain as they desired, expired, the producers who sold milk to the appellant, became satisfied that said law, which was ostensibly passed for their benefit, was in fact in the interests of distributors, and made complaint to appellant as to their dissatisfaction with the base rate forced upon them by said law; and, after the law expired, they demanded that the appellant return to the flat rate, which the appellant refused to do until some time during the latter part of 1935.

In the meantime, the dissatisfaction of producers throughout the area embraced in what was known as the Cleveland market, became so pronounced that distributors in that territory, one at a time, gradually went back to paying for milk on a flat rate basis, and, before November 1, 1935, a large majority of distributors in the territory were on a flat rate basis, and the three producers who had signed said contracts, together with many other producers selling to said appellant, had, before said date, petitioned and finally demanded that appellant return to the flat rate basis; and the trial court found, and such finding is not manifestly against the weight of the evidence, that at the time the three appellees refused to deliver their milk to appellant, not only a majority of the distriubtors in said area had returned to the flat rate, but a majority of the poundage purchased by distributors in said territory was purchased upon a flat rate basis.

Promptly upon the refusal of said three appellees to deliver their milk to appellant, the appellant brought these actions to recover $100 from each of said appellees, claiming that they had wrongfully terminated their contracts in violation of the terms of said contracts.

The appellees admitted that they had not terminated said contracts at the time, and by giving the notice, specified in said contracts, but claimed that they were not liable under the terms of the contract because the contracts were terminated "for good cause."

As we construe said contracts, appellees are not liable if said contracts were terminated "for good cause." As we have said, the trial court was justified in finding that at the time of the termination of said contracts the Cleveland market was upon a flat rate basis, and we are of the opinion that the trial court was justified in finding that the repeated refusals of appellant, after said law expired, to pay appellees for their milk upon a flat rate basis, in conformity to the Cleveland market, was a good cause for the appellees' termination of said contracts, and that therefore it was not error for the trial court to render judgment in favor of said several appellees.

Judgment affirmed.

STEVENS, PJ, and DOYLE, J, concur in judgments.

## ON APPLICATION FOR REHEARING

### Decided March 1, 1937

PER CURIAM

Since the release of the opinion in the three above-captioned cases, an application for a rehearing has been made by counsel for the Wooster Dairies Co., upon the ground that the opinion failed to respond to one of the assignments of error set out in said counsel's brief. That assignment had to do with the question of waiver by said defendants of antecedent breaches by plaintiff of the provisions of said contracts.

We feel that it is apparent from a reading of the opinion that this court did not find any waiver by defendants. Inasmuch, however, as said opinion apparently did not convey to counsel the idea that this court concluded there was no evidence of a waiver of said breaches by said defendants, and to the end that any misunderstanding in that connection may be relieved, we hereby supplement said opinion by the statement that it is the judgment of this court that the evidence contained in the record in said cases does not disclose a waiver upon the part of said defendants of the breaches of said contracts committed by the plaintiffs.

The application for a rehearing, as such, is denied.

STEVENS, PJ, WASHBURN and DOYLE, JJ, concur in judgment.